## CHARLESTON.

### NORFOLK & WESTERN RAILWAY CO. *v.* PUBLIC SERVICE COMMISSION.

Submitted February 8, 1922. Decided February 14, 1922.

1. CARRIERS—*Public Service Commission Held Authorized to Establish a Specific Rate per Car on Coal Moving Within a Five Mile Limit in a Specified District.*

   When the distance rate on coal maintained by a railway company is 84 cents per ton for a haul of ten miles and under, and the railway company has in effect a switching rate of $9.00 per car applying only on coal and coke moving five miles or under between plants of producing coal and coke operations in a specified district, the Public Service Commission has authority to establish a specific rate per car on coal moving within the five mile limit in such district, though the coal be consigned by a coal company, not to itself for use in its own operations, but to an electric power company, it appearing that the rate so established works no injustice to the railway company. (p. 270).

2. SAME—*In Establishing a Specific Rate per Car on Coal Moving Within a Specified District Held Commission Might Consider a Switching Rate But Need Not Inquire into Reasonableness of Whole Schedule of Carriers' Distance Rates.*

The Commission, in determining such specific rate, has the right to consider the switching rate maintained by the railway company and to make comparison of the service performed by the carrier under the switching rate with the service required under the specific rate; and in establishing such specific rate it is not as a matter of law compelled to inquire into the reasonableness of the whole schedule of the railway company's distance rates. (p. 270).

Petition by the Norfolk & Western Railway Company against the Public Service Commission to suspend and annul an order made on petition of the Kentucky & West Virginia Power Company, and the Crystal Block Coal Company, before the Public Service Commission against the Norfolk & Western Railway Company, regarding the transportation rates.

*Relief denied and petition dismissed.*

*Lucian H. Cocke, Lucian H. Cocke, Jr.,* and *Holt, Duncan & Holt,* for petitioner.

*Frederick L. Ballard,* and *Angus W. McDonald,* for respondent.

MEREDITH, JUDGE:

The Kentucky and West Virginia Power Company and Crystal Block Coal Company filed their petition before the Public Service Commission, Case No 1252, against the Norfolk & Western Railway Company, averring that the Power Company is engaged in the electrical power business, having its principal office and place of business at Sprigg and Logan, West Vriginia, Hazard, Kentucky and Philadelphia, Pennsylvania, the coal company being engaged in the mining of coal with plants at Rawl and Lavoy, West Virginia. The electrical power plant of the Power Company involved in this proceeding is located at Sprigg on the Alma branch of the defendant railway company in Mingo county, and procures its fuel coal from the Coal Company at its mine

No. 3 at Rawl on the main line or from Tipple No. 1 at Lavoy on the Alma branch; Tipple No. 3 is 3.71 miles from the power plant and Tipple No. 1 is 1.32 miles from the power plant.

The Power Company is a public utility, generating electricity for sale to the public and it is averred in the petition that the rates fixed by the Commission to be charged for electricity by the Power Company were based on the freight rate then charged by the defendant railway company for each car load of coal delivered to the Power Company from said Coal Company, being a shifting charge of $9.00 per car, and that the railway company had made that charge for a long time prior thereto as a shifting charge, plus the war tax, which made the aggregate charge $9.27 per car, and which charge petitioners averred was adequate and reasonable for the service performed; it is averred that on November 1, 1919 while said freight charge was in effect the Power Company entered into a contract with the Coal Company for a period of ten years to purchase all its coal from said Coal Company at mining cost plus freight and 30 cents a ton profit to the Coal Company; that recently the railway company has demanded that the Power Company pay 84 cents a ton for all coal delivered by the railway company from the mines of the Coal Company to the Power Company instead of the prior charge of $9.00 per car plus war tax; that the coal shipments from the Coal Company to the Power Company are intra-state and that the Commission has power to investigate and regulate the rate charged on such shipments and to make a reasonable charge for such service, and petitioners aver that the 84 cents per ton rate is an unreasonable rate for the handling of coal from the Coal Company's mines to the Power Company's plant, and pray that the railway company may be prevented from demanding or charging any greater rate than $9.00 per car for the coal handled by defendant from the plants of the Coal Company to the plant of the Power Company, and that the rate of $9.00 per car for shifting charge, if not already fixed by the Commission for such service, be established. The defendant answered the petition, averring that for some months

prior to April 1, 1921, a shifting charge of $9.00 per car was collected on coal moving to the Power Company from the mines of the Coal Company located at Rawl and Lavoy, but that said charges were assessed and collected in error and not according to the terms of the tariff applying to the movement, and that the amounts so collected were not adequate and reasonable charges for the service rendered. It also shows that it had filed with the Commission a copy of all charges and tariffs on coal and coke within this state; that its tariff known as its "distance tariff" fixing a rate of 84 cents per ton for a movement of coal ten miles and under is on file with the Commission, being defendant's "Tariff C. & C. No. 4058, P. S. C. W. Va. No. 36-A", and that a "switching tariff on coal and coke" is on file with the Commission, defendant's "Tariff C. & C. No. 4077, P. S. C. W. Va. No. 37-A"; that the last tariff has the following provision:

"Local freight tariff publishing switching charges applicable only on coal and coke moving between plants of producing coal and coke operations in the Pocahontas, Tug River, Thacker and Kenova Districts within the States of West Virginia and Kentucky, five miles and under, $9.00 per car."

The railway company avers that the last mentioned tariff applies solely to coal operators, on coal which a coal operator may decide to have moved as a part of his own industrial operation, usually from his coal tipple to his power house, and which coal does not change ownership and involves no commercial shipment, and that the 84 cents per ton rate for a distance haul is a correct rate to be charged the Power Company, and is a fair and reasonable charge for the service rendered.

The Commission found that until recently the railway company charged $9.00 per car for shifting the coal from either of the two tipples of the Coal Company to the power plant and that the railway company is now seeking to charge the Power Company 84 cents per ton for hauling said coal from either of said tipples to the power plant and that in order to ascertain the amount of charge for each car, it is necessary to haul the coal to the city of Williamson for the

purpose of weighing it and then hauling it back, making an additional haul of from 8 to 12 miles on each car besides having to pass through the yards of Williamson which are frequently congested; that the Power Company consumes about 30,000 tons of coal per year and in order to use the coal it requires the use of about 8 coal cars a day if the coal is shifted direct from these tipples to the power plant, but if the coal is moved by Williamson and weighed it re- quires the use of about 20 cars per day and that when the mines in that community are working at capacity the yards at Williamson are very much congested and there is con- siderable delay in getting the coal weighed. The Commis- sion therefore found in its opinion that there is a waste both to the public and to the railway company in hauling the coal to Williamson for the purpose of weighing it, requiring ad- ditional motive power, rolling stock, yard space and labor, all of which in normal times are required to handle the traffic which is offered the railway at Williamson and vicinity, and that it is a matter of economy both to the public and to the railway to ship coal direct from the two tipples to the power plant, and for that reason the Commission was of the opinion that a fair and reasonable rate should be estab- lished for cars that come direct from the two tipples to the power plant, and fixed $12.50 per car as a reasonable rate or charge for hauling the coal from either of the two tipples to the power plant, and established such rate, and required the railway company to put it into effect as of November 25, 1921, and to file with the Commission a proper tariff setting forth such rate.

This order of the Commission the railway company petit- tioned this court to suspend and annul.

The question at issue is what rate should be applied, whether it should be the "Distance Rate" of 84 cents per ton, covering a distance of ten miles and under, or the rail- way company's "Switching Rate" which applies only on coal and coke moving between plants of producing coal and coke operations in the Pocahontas, Tug River, Thacker and Kenova Districts, in West Virginia and Kentucky for a distance of five miles and under, which is fixed at $9.00

per car; or whether the Commission had the right to fix a specific rate applying to the particular industry.

The railway company claims that the "Distance Rate" of 84 cents per ton should apply; the Power Company claimed before the Commission that the "Coal and Coke Switching Rate" of $9.00 per car for a distance of five miles and under should apply; the Commission held that neither the "Distance Rate" nor the "Switching Rate" under the particular circumstances of this case should apply, and fixed a specific rate of $12.50 per car.

The Railway Company assigns as error the following:

"1.   That there was, and is, no evidence in the record supporting the theory that 84c per ton for the haul in question was, or is, unreasonable, or unjustly discriminatory.

2.   That the order of the Commission arbitrarily fixes the rate for the haul in question at $12.50 per car, without any evidence upon which to base the same, and in violation of the principle that rates per ton-mile should rise, or fall, as the distance decreases or increases, and,

3.   That the rate of $12.50 per car was fixed without regard to the present tariffs of the defendant, or the rights of other shippers along its line."

From an examination of the record we think there is abundant evidence to justify the Commission in finding that the "Distance Rate" of 84 cents per ton is unreasonably high. The evidence clearly shows that during the period that the power plant was owned and operated by the Crystal Block Coal Company it was charged the "Switching Rate for Coal and Coke", first at $5.00 per car and later at $9.00 per car. It is further shown in evidence and indeed admitted in argument that if the power plant were now being operated by the Coal Company as a part of its industrial operation it would be charged the switching rate of $9.00; yet the identical service would be performed in the one case as in the other; there would be no charge whatsoever, except in the present instance the Power Company pays the freight, and in the other, the Coal Company would pay it.   And yet counsel for the railway company say that this is not evidence that can be considered in justifying a change from the "Dis-

tance Rate'' to a specific rate. We think it is. A rate is seldom considered by itself but in comparison with other rates, and we see no good reason why the Commission in making such comparison of the rate in question should be confined to comparing it with rates as scheduled in the railway company's ''Distance Tariff''. The Commission not only had the right, but it was its duty to investigate the rate charged and services performed under the company's ''Switching Tariff for Coal and Coke'' in this region and to use that data along with other data as evidence in forming its opinion of what a just rate in this case should be, but the Commission, as a matter of law, is not compelled to inquire into the reasonableness of the railway company's whole schedule of distance rates. Besides, in fixing the rate the Commission was not groping in the dark, nor making an experimental rate, as is so often the case when a new rate is fixed. The results of the $9.00 rate were known to the Railway Company, for it voluntarily maintained that rate for a considerable period.

It was held in *I. C. C.* v. *B. & O. R. R. Co. et als.,* 225 U. S. 326, that ''An interstate carrier may not charge a different rate for the transportation of railroad fuel to a given point than for the transportation of commercial coal to the same point'', and that ''A railroad company can not be made a favored shipper and given a lower rate on the same commodity to the same point than other persons.'' And the same court held in *I. C. C.* v. *Delaware, Lackawanna & Western Railroad Company,* 220 U. S. 235, that ''A carrier can not make mere ownership of goods tendered for transportation the test of the duty to carry, nor may a carrier discriminate in fixing charges for carriage upon such ownership.''.

In *Virginia-Carolina Chemical Co.* v. *A. C. L. R. R. Co.,* 22 I. C. C. Rep. 394, it was held that: ''The rule is well establshed that a rate can not be based upon the use to which the commodity is to be devoted; neither can a rate be confined in its terms or application to an individual or class; it must be open to all shippers alike.'' See also *Davis* v. *West Jersey Express Co.,* 16 I. C. C. Rep. 215.

It is conceded by the railway company that if the coal

was to be consumed by the Coal Company in a power plant of its own, used in its own operations, the shipments would come within the purview of the switching rate of $9.00 per car, and would be charged at that rate.

No evidence was offered by it to show that the established rate of $12.50 will not be remunerative; indeed, we think the evidence justifies the conclusion that a specific rate of $12.50 per car for direct shipment will prove as profitable to the railway company under normal conditions as would the "Distance Rate" of 84 cents per ton, if it were compelled to make the wholly unnecessary, useless and wasteful haul to Williamson for weighing and back again to the power plant.

As was said by Commissioner Dawson in the case of *Greer v. B. & O. R. R. Co.*, P. U. Rep. 1916-D 287, "The West Virginia Commission has power to establish a schedule of freight rates independently of the proposed schedules submitted by the shipper and the railroad, although the evidence in support of the proposed rates was confined to a comparison with other rates, since the Commission is as competent to draw conclusions from comparisons as are the interested parties."

Complaint is made by the Railway Company that to permit the establishment of a specific rate under the circumstances will wholly upset the Railway Company's Distance Tariff or Schedule of Distance Rates. We hardly think the Railway Company need have any such fear. The published reports show that the Commissions in all the states have been doing this for many years, and yet the Distance Tariffs remain. Of course, the rights of the railway must be respected and upheld, and this court will not hesitate in a proper case, where injustice is threatened, to set aside the findings of the Commission, especially so, if a rate should be fixed that would amount to a confiscation of the railway company's property, but no such result is claimed here. There is nothing sacred about a railroad company's tariffs or schedules of rates, so far as we can see. They are the result of many factors, but chiefly that of experience; of course when they have been established, specific changes to meet specific cases

ought not to be made except when it is necessary to prevent injustice; but when the need arises, this court will not use its power to stay the hands of the authority whose duty it is to correct abuses, and especially so when no injustice is done the railway. It matters little to the shipper what the rate he pays may be called, whether "distance rate" or "switching rate" or "specific rate" or what not. What concerns him, and we doubt not, what most concerns the carrier, is the amount of the rate.

Being of the opinion that the Commission was fully warranted in its finding, and seeing no error, the petition is dismissed.

*Relief denied and petition dismissed.*